UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LONNIE SANDS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:17-CV-211-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Lonnie Sands seeks review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied him supplemental security income and erred by failing to (1) adequately identify his medically determinable impairments and, therefore, failing to incorporate them into the Plaintiff's residual functional capacity, and (2) drawing improper inferences from the Plaintiff's failure to pursue regular medical treatment without considering the reasons for such failure.

**BACKGROUND**

On December 23, 2013, the Plaintiff filed his Title XVI application for a period of supplemental security income, alleging disability beginning on December 5, 2007. (R. 17.) His claims were denied initially on March 24, 2013, and upon reconsideration on July 9, 2014. (*Id.*) On November 13, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Richard P. Oestreich, a vocational expert (VE), also

appeared and testified at the hearing. (*Id.*) On December 17, 2015, the ALJ denied the Plaintiff's application, finding he was not disabled as of his alleged onset date. (R. 17–31.) On March 10, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On May 9, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since his alleged onset date, December 5, 2007. (R. 19.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including bipolar disorder; anxiety disorder; major depressive disorder with psychotic features; panic disorder with agoraphobia; hypertension;

asthma; chronic obstructive pulmonary disorder (COPD); and obesity. (*Id*.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id*.) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including cardiac dysrhythmias and other premature beats; diverticulosis, colon polyps, and internal hemorrhoids; hyperlipidemia; benign prostatic hyperplasia; atherosclerosis; sinus tachycardia; cannabis abuse; and polysubstance abuse were non-severe because they did not cause more than minimal interference with the Plaintiff's basic work activities. (*Id.*) The ALJ further found that the Plaintiff's alleged back and knee pain, abdominal pain, learning disability, attention deficit hyperactivity disorder, social disorder, schizophrenia, and post-traumatic stress disorder were not medically determinable. (R. 20.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," (§ 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), except:

> He can have frequent exposure to dust, odors, fumes and pulmonary irritants. He can perform simple, routine, repetitive tasks but not at a production rate pace (e.g. assembly line work). He can make simple work-related decisions. He can have frequent contact with supervisors, and occasional contact with coworkers and the public. He would be off-task 10 percent of the time in an 8-hour workday in addition to normal breaks. He would be absent from work one day per month.

(R. 23.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms. (R. 24.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (*Id.*) The Plaintiff alleged difficulty concentrating and undertaking activities, as well as memory difficulties; anxiety attacks, accompanied by tremors; racing thoughts; hallucinations and delusions; suicidal tendencies; a feeling of lack of control over his thoughts, emotions, and actions; mood swings; lack of energy; shortness of breath; headaches; stomach problems and back and knee pain; and troubled sleep. (*Id.*) As a result, the Plaintiff claimed that he is unable to lift more than 30 pounds; unable to stand for more than 10 to 15 minutes at a time; unable to climb more than one flight of stairs at a time; is limited in squatting, bending, and kneeling; has difficulty talking and seeing; has difficulty being around groups of people and has little in the way of social interaction; avoids authority figures; has difficulty following instructions and completing tasks; is limited in the use of his hands, limited in performing personal care, and can prepare only simple meals; does little housework or yardwork; has difficulty shopping; and does not handle stress or changes in routine well. (*Id.*)

Two of the Plaintiff's friends and the Plaintiff's sister filed third-party function reports, and the Plaintiff's sister also testified at the hearing. (*Id.*) The ALJ found that "[t]heir allegations [were] generally consistent with those of the claimant." (*Id.*) However, the ALJ found that persuasive value of these evaluations was "slight in comparison to the considerations that detract from the credibility of the claimant's allegations" and the ALJ could not "entirely discount the possibility that these documents and this testimony may have been partly influenced by a desire to help the authors' friend or brother." (*Id.*)

The ALJ then turned to the objective medical evidence of record and noted that the Plaintiff's various examinations were "essentially normal," and his medical treatment was generally conservative. (R. 25–27.) After reviewing the record, the ALJ concluded that the Plaintiff's RFC assessment was "supported by the claimant's treatment history and resultant objective evidence, the results of the consultative examinations, and by the opinions" to which the ALJ assigned "great weight." (R. 29.) Specific to the Plaintiff's physical impairments, the ALJ found that "the generally normal or mild findings by treating and examining professionals, and the conservative, sporadic nature of the claimant's treatment history, do not support a finding of greater limitation" than that in the ALJ's RFC assessment. (*Id.*)

The ALJ found that the Plaintiff is capable of performing his past relevant work as a factory worker. (*Id.*) Further, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 30.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act. (R. 31.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. A court will "conduct a critical review of the evidence," by considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) drawing improper adverse inferences from the Plaintiff's failure to pursue regular medical treatment without considering the reasons for such failure, and (2) failing to adequately identify the Plaintiff's left knee traumatic persistent effusion as a medically determinable impairment and, therefore, failing to incorporate it into his RFC.

The Court is unable to meaningfully review the ALJ's credibility determination for multiple reasons. First, the Court "cannot assess the validity of the ALJ's credibility determination because the ALJ did not ask important questions to determine if" the Plaintiff's failure to obtain medical care was "justifiable." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

"Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft*, 539 F.3d at 679 ("The ALJ must not draw any inferences about a claimant's condition from this failure [to seek treatment] unless the ALJ has explored the

7

claimant's explanations as to the lack of medical care."). This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as []he may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*, 759 F.3d at 816; *see also Shauger*, 675 F.3d at 696 ( finding that "good reasons" for failing to obtain treatment "may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects"); *Frierson v. Colvin*, No. 2:14-CV-170, 2015 WL 5174058, at *6 (N.D. Ind. Sept. 2, 2015) (finding fault where "[t]he ALJ did not ask Plaintiff about his compliance with treatment, and the credibility section of his opinion does not address any reasons for noncompliance, such as inability to afford treatment") (citing *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006)). "[F]ailure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity." *Fields v. Berryhill*, No. 2:16-CV-24, 2017 WL 1075120, at *3 (N.D. Ind. Mar. 21, 2017).

In fact, when an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy*, 759 F.3d at 816 (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Epting v. Colvin*, No. 2:18-CV-385, 2016 WL 1237888, at *8 (N.D. Ind. Mar. 29, 2016) ("When considering noncompliance with treatment . . . an ALJ is also required [to] make a determination about whether noncompliance with treatment is justified . . . ."); *Galloway v. Colvin*, No. 2:17-CV-24, 2015 WL 893172, at *5 (N.D. Ind. Mar. 3, 2015) (noting that "[h]ad the ALJ's opinion actually cited this fact as a reason for finding Plaintiff not credible, it would have been an error since he did not explore potential reasons why she wasn't treated that year" (citing *Shauger*, 675 F.3d at 696)); *Pitaroski v. Colvin*, No. 213-CV-112, 2014 WL 3687234, at

8

*12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed").

An ALJ also cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if he has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the Plaintiff's only treatment was through medication that provided "some benefit"); *Parker v. Colvin*, No. 2:15-CV-316, 2016 WL 4435622, at * 5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take").

In this case, the ALJ noted, on multiple occasions, the "sporadic" nature of the Plaintiff's treatment. (R. 25, 27, 29.) However, at the hearing, the ALJ did not inquire into the Plaintiff's efforts to obtain treatment, much less reasons for the perceived inadequacy of treatment efforts. The record indicates that the Plaintiff did not have insurance for at least some part of the relevant time period, but there is no indication that the ALJ considered the Plaintiff's lack of insurance. Moreover, many of the Plaintiff's severe impairments identified by the ALJ are mental, and a lack of treatment could very well support the reported severity of the impairments that the ALJ discounted due to inadequate pursuit of treatment. "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants

9

from seeking [or] receiving medical care," *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013), and there is nothing in the record from which the Court can infer that the ALJ properly undertook this consideration before drawing a negative inference regarding the Plaintiff's credibility.

However, a credibility determination does not need to be flawless. *Id.* "[A] credibility determination will stand as long as there was some support in the record even if some of the ALJ's credibility determinations were a bit harsh." *Whetzel v. Astrue*, No. 1:07-CV-210, 2009 WL 537640, at *2 (N.D. Ind. Mar. 4, 2009) (citing *Berger*, 516 F.3d at 546). The Commissioner argues that the ALJ properly weighed the Plaintiff's treatment in conjunction with other factors affecting the Plaintiff's credibility regarding the persistence and limiting effects of his symptoms. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder*, 2010 WL 2243248, at *4 (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (*citing Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a

number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Even though statements by third parties corroborated the Plaintiff's allegations, the ALJ discounted them because of inconsistencies with the objective medical evidence and the potential for bias on the part of friends and family members. However, "the ALJ should not simply reject Plaintiff's witness because of potential bias." *Natt v. Colvin*, No. 2:14-CV-81, 2015 WL 1418792, at *9 (N.D. Ind. Mar. 27, 2015) (citing *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)); *see also Ruiz v. Berryhill*, No. 2:17-cv-81, 2018 WL 1517077, at *6 (N.D. Ind. Mar. 28, 2018) (finding error where ALJ discounted wife's opinion due to her familial relationship and conflicts with the objective medical evidence). In fact, the Seventh Circuit has rejected the notion that the testimony of somebody related to the Plaintiff "must automatically be discounted for bias." *Garcia*, 741 F.3d at 761.

The only other justification the ALJ gives regarding the adverse credibility determination as to the Plaintiff, his friends, and his sister is the lack of support in the Plaintiff's medical record. But, the Seventh Circuit, and this District, have rejected such an approach. *See, e.g.*, *Villano v. Astrue*, 556, F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (same); *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) (same); *Myles v. Astrue*, 585 F.3d 672, 677 (7th Cir. 2009) (same); *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and

remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Salaiz*, 202 F. Supp. 3d at 893–94 ("The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence . . . ."); *Vercel v. Colvin*, No. 2:15-CV-81, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6).

Therefore, the Court finds that the ALJ failed to build a logical bridge between the evidence and his adverse credibility determination, and the Court is unable to meaningfully review the decision.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on the above cited issues, it need not address the remainder of the parties' arguments. On remand, the ALJ is encouraged to revisit whether the Plaintiff's left knee traumatic persistent effusion is, indeed, a medically determinable impairment.

SO ORDERED on May 16, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT